850 F.2d 200
 129 L.R.R.M. (BNA) 2390, 109 Lab.Cas. P 10,609
 Pauline SKELTON, Administratrix for the Estate of Dwight
Skelton, Plaintiff-Appellant,
v.
Robert J. LOWEN, Chairman, and the Board of Trustees of
Masters, Mates & Pilots Health & Benefit Plan,
Defendants-Appellees.
 No. 87-2174.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 9, 1988.
Decided June 30, 1988.
 
 1
 Patricia W. Lemley, Jones, Lemley & Carlson, Norfolk, Va., for plaintiff-appellant.
 
 
 2
 David C. Kohler, Christian, Barton, Epps, Brent & Chappell, Richmond, Va., Joan Ebert Rothermel, Seham, Klein & Zelman, New York City, for defendants-appellees.
 
 
 3
 Before WINTER, Chief Circuit Judge, WIDENER, Circuit Judge, and McMILLAN, District Judge for the Western District of North Carolina, sitting by designation.
 
 McMILLAN, District Judge:
 
 4
 Plaintiff, administratrix of Dwight Skelton's estate, seeks to establish entitlement to reimbursement for medical expenses and disability benefits under provisions of the Masters, Mates and Pilots Health and Benefit Plan. That plan was established pursuant to a collective bargaining agreement between the International Organization of Masters, Mates and Pilots and various maritime employers, including those who employed Mr. Skelton, and is governed by Section 302(c) of the Labor Management Relations Act, Title 29 U.S.C. Section 186(c).
 
 
 5
 The defendants, administrators of the health and benefit plan, determined that the decedent was ineligible for the "Temporary Long-Term Disability Program" and "Major Medical Expense Benefits." The District Court awarded summary judgment in favor of the defendants, concluding that their interpretation and application of these provisions was neither arbitrary or capricious, 669 F.Supp. 133. We affirm in part and reverse in part.
 
 I.
 
 6
 The court recognizes and understands defendants' contention that the District Court lacked subject matter jurisdiction. Plaintiff brought this action pursuant to Section 302 of the Labor Management Relations Act instead of filing it under the Employee Retirement Income Security Act, 29 U.S.C. 1001 et seq. ("ERISA"), which also would have been appropriate. The scope of federal jurisdiction under Section 302 is an unsettled question. Federal courts are not authorized to consider the reasonableness of the benefit provisions, and the majority of courts restrict jurisdiction to actions involving structural defects in the trust. See, United Mine Workers of America Health and Retirement Funds et al. v. Robinson, 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1981). Nonetheless, the court will consider the merits of plaintiff's claim since had she filed the complaint under the ERISA or amended the complaint to include an ERISA claim there would be no federal jurisdiction problem.
 
 II.
 
 7
 Plaintiff's decedent was employed by one of the health plan's contributing employers in 1964. He continued to work as a licensed deck officer for various contributing employers until April, 1982, except for a three and one-half-year period when he was temporarily disabled. On April 19, 1982, decedent was hospitalized with recurrent Hodgkins disease and became totally and permanently disabled as of that date. Decedent's medical expenses were paid by the plan for the next sixteen months, through August 19, 1983. None of the medical expense claims submitted by Skelton from August 19, 1983, to his death on June 12, 1985, were paid by the plan. The defendants had determined that he was ineligible for either temporary long-term disability or major medical expense benefits as of August 19, 1983.
 
 
 8
 The decisions of the trustee defendants are afforded great deference. The trustees enjoy wide discretion in determining eligibility for benefits under the health and benefit plan and their determinations may only be overturned if they are arbitrary or capricious. Seafarers Pension Plan v. Sturgis, 630 F.2d 218, 221 (4th Cir.1980); Dist. 17, Dist. 29, Local Union 7113 v. Allied Corp., 765 F.2d 412, 416-417 (4th Cir.1985) cert. denied, 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985).
 
 
 9
 The availability of long-term disability benefits depends upon the interpretation to be given Section 9 of Article IV of the Master, Mates & Pilots Health & Benefit Plan. As applicable here, this provision reads:
 
 
 10
 Section 9. Temporary Long-Term Disability Program.
 
 
 11
 Effective June 16, 1982, Participants, who, while eligible for benefits under the plan, become totally disabled and unable to engage in any occupation shall be provided a "Wage Continuation Program," to commence the sixth month following the month in which the Participant's disability occurred.
 
 
 12
 This benefit will be paid monthly in an amount equal to the average monthly earnings of the Participant in covered employment during the 36 months prior to disability up to a maximum of $1,500 per month. The amount payable will be offset by any Disability or Pension Benefits payable under the M.M. & P. Benefits Plans, as well as any Social Security Awards payable to such Participant. The benefit will be paid to such Participant. The benefit will be paid during the period of disability up to a maximum of 60 monthly payment for any one disability.
 
 
 13
 In defending their denial of disability benefits, the trustees of the plan advance the argument that the terms of the provision are ambiguous; that their initial intent to limit its applicability to disabilities solely of temporary duration is evidenced by the caption or heading of the section "Temporary Long-Term Disability Program"; and that their actions in denying coverage to those who are permanently disabled are not arbitrary or capricious. In support of this argument, the trustees offer their subsequent amendment to Section 9 which purports to "clarify" that this section applies only in cases of temporary disability, as well as their denial of these benefits in two other cases where those claimants, as in the case before us, were suffering from permanent disabilities.
 
 
 14
 There are several difficulties with this argument. First, the claimed ambiguity attributable to the heading of Section 9 becomes important only if the language of the body of the section is itself ambiguous. By its terms, Section 9 limits payment of benefits to a maximum of 60 months. There is no ambiguity in this limitation of the duration of benefits. Indeed, the provision of benefits for five years supports a construction of "disability" as other than "temporary," as does the commencement of payments "the sixth month following the month in which the Participant's disability occurred." The sole reference to any quantum or duration of "disability" in the body of the section establishes that it must be "total." Whatever else Skelton's disability may have been, it at least was total. There is no reference in the body of the section to "temporary disability" (emphasis added); the only limiting language pertains to the duration of benefits. The trustees seek to overcome the plain meaning of the section by pointing to its heading, but section headings should not be used to create ambiguity or to support restrictive interpretations not found in the body of the provision. See eg. Bersio v. United States, 124 F.2d 310 (4th Cir.1941) cert. denied 316 U.S. 665, 62 S.Ct. 1033, 86 L.Ed.2d 1742 (1941); Yoke v. Mazzello, 202 F.2d 508 (4th Cir.1953). There is no doubt that the trustees have since amended this section to apply only in instances of temporary disability. This subsequent modification cannot be properly used to abrogate the plain meaning of the section as it applied to Skelton; if anything, the contrary should obtain as a matter of logic. Moreover, inasmuch as the decision here was predicated upon reading into the section an ambiguity which does not exist, we are similarly unpersuaded by the fact that the trustees refused coverage to two other totally disabled plan members.
 
 
 15
 The plain language of the section mandates payment of the disability benefit to appellant. Refusal to provide coverage in the face of the plain direction of the plan to the contrary amounts to arbitrary and capricious action.
 
 
 16
 Unlike the trustees' interpretation and application of the long-term disability provision, the decision of the trustees to deny plaintiff reimbursement under the Major Medical Expense Benefits provision for expenses which accrued after August 19, 1983, was not arbitrary and capricious. The Major Medical Expense Benefits provision provides:
 
 Section 1. Major Medical Expense Benefits
 
 17
 If any eligible Employee or eligible Dependent incurs Covered Medical Expenses (as defined herein) a benefit shall be reimbursable to the Employee, for such expenses so incurred in an amount equal to 80% of the amount by which the sum of all Covered Medical Expenses which are incurred by the Employee and his Dependents in a calendar year exceeds the deductible amount of $100.00 on the date on which the Employee or Dependent receives or is furnished with services or supplies in connection with which such expense is incurred.
 
 
 18
 Effective June 16, 1981, all out-of-pocket covered expenses incurred during an 18-month period or incurred as the result of one illness or injury in excess of $1,500, shall be reimbursed 100% under Major Medical. (Amendment No. 70--Adopted 12/4/81).
 
 
 19
 Article II of the Rules and Regulations for the Health and Benefit Plan sets forth in great particularity the conditions for employee eligibility. Section 1(d) explains when an employee's eligibility terminates:
 
 
 20
 (d) The eligibility of an Active Employee shall terminate on the earliest of the following dates:
 
 
 21
 (1) The last day of the period of six (6) consecutive months starting with the last day of a period of thirty days or more, in any six (6) consecutive months, for which the Active Employee was on the payroll of one or more Employers: provided, that eligibility which is based in whole or in part upon days of Disability shall in no event be continued for more than one (1) year from the last day of Disability which occurred within six (6) consecutive months of the last day the Active Employee was actually on such payroll.
 
 
 22
 This provision means that a disabled employee can remain eligible for eighteen months after his or her last day of employment.
 
 
 23
 Plaintiff concedes that as of August 19, 1983, decedent was no longer an "eligible" employee within the meaning of the plan. However, she maintains that the decedent did not need to be an "eligible" employee to qualify for the 100% reimbursement on out-of-pocket expenses incurred during an 18-month period or incurred as the result of one illness in excess of $1,500.00 since paragraph 2 of the Major Medical Expense provision does not specifically limit the 100% reimbursement to "eligible" employees only. Plaintiff's observation is technically correct, but meaningless all the same. Nothing in the plan suggests that the eligibility requirements of Article II apply only to those benefit provisions in which they are specifically mentioned. Claims for benefits must be considered in the context of the entire medical and disability benefit plan. See, Holland v. Burlington Industries, Inc., 772 F.2d 1140, 1149 (4th Cir.1985), aff'd., sub nom. Brooks v. Burlington Industries, Inc., et al, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986). Defendants' reading of the Major Medical Expense Benefits provision as incorporating the eligibility requirements of Article II is reasonable and their conclusion that decedent was not eligible for major medical expense reimbursement as of August 19, 1983, was not arbitrary or capricious.
 
 
 24
 The judgment of the district court is accordingly REVERSED with respect to the denial of coverage under the health plan's temporary long-term disability benefits provision and AFFIRMED with respect to the denial of coverage under the health plan's major medical expense benefits provision.
 
 
 25
 We remand to the District Court for an entry of judgment in compliance with this opinion.